Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORKS LENDING LLC, *et al.*,[1] | Case No. 22-10969 (MG) |
| Debtors. | (Jointly Administered) |

**NOTICE OF FILING**
**OF AMENDED GLOBAL NOTES AND SCHEDULE F**

**PLEASE TAKE NOTICE** that, on October 5, 2022, the debtors and debtors in possession (the "Debtors") filed schedule F of their schedules of assets and liabilities ("Schedule F") and global notes accompanying the schedules of assets and liabilities and statements of financial affairs ("Global Notes") in the United States Bankruptcy Court for the Southern District of New York (the "Court") pursuant to section 521 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532, (the "Bankruptcy Code") and rule 1007(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450). The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

**PLEASE TAKE FURTHER NOTICE** that on October 5, 2022, Debtor Celsius Networks Lending LLC filed the *Global Notes and Statement of Limitations, Methodology and Disclaimers Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* [Docket No. 5] (the "Schedules and Statements").

**PLEASE TAKE FURTHER NOTICE** that Debtor Celsius Networks Lending LLC hereby files amendments to Schedule F ("Amended Schedule F") and the Global Notes (the "Amended Global Notes") pursuant to Bankruptcy Rule 1009(a) and rule 1009-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the Southern District of New York (the "Local Bankruptcy Rules").  The Amended Schedule F and the Amended Global Notes shall be deemed included in the original schedules.

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right to further amend or supplement, in their sole discretion, the Amended Schedule F, the Amended Global Notes, any other schedules of assets and liabilities, or their statements of financial affairs filed in these chapter 11 cases, consistent with the Bankruptcy Code and Bankruptcy Rules.

**PLEASE TAKE FURTHER NOTICE** that copies of the Schedules and Statements and other pleadings filed in these chapter 11 cases may be obtained free of charge by visiting the website of Stretto at https://cases.stretto.com/celsius.  You may also obtain copies of the other pleadings filed in these chapter 11 cases by visiting the Court's website at http://www.nysb.uscourts.gov in accordance with the procedures and fees set forth therein.

*[Remainder of page intentionally left blank]*

New York, New York
Dated:  March 24, 2023

/s/ Joshua A. Sussberg

**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
Joshua A. Sussberg, P.C.
601 Lexington Avenue
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900
Email:           joshua.sussberg@kirkland.com

- and -

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:     (312) 862-2000
Facsimile:      (312) 862-2200
Email:           patrick.nash@kirkland.com
                      ross.kwasteniet@kirkland.com
                      chris.koenig@kirkland.com
                      dan.latona@kirkland.com

*Counsel to the Debtors and Debtors in Possession*

Joshua A. Sussberg, P.C.
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

Patrick J. Nash, Jr., P.C. (admitted *pro hac vice*)
Ross M. Kwasteniet, P.C. (admitted *pro hac vice*)
Christopher S. Koenig
Dan Latona (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| CELSIUS NETWORK LLC, *et al.*,[1] | Case No. 22-10964 (MG) |
| Debtors. | (Jointly Administered) |

**AMENDED GLOBAL NOTES AND STATEMENT OF**
**LIMITATIONS, METHODOLOGY AND DISCLAIMERS**
**REGARDING THE DEBTORS' SCHEDULES OF ASSETS**
**AND LIABILITIES AND STATEMENTS OF FINANCIAL AFFAIRS**

Celsius Network LLC and certain of its affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (the "Debtors"), have filed these respective Schedules of Assets and Liabilities (the "Schedules") and Statements of Financial Affairs (the "Statements") in the United States Bankruptcy Court for the Southern District of New York (the "Court"). The Debtors, with the assistance of their legal and financial advisors, prepared the Schedules and Statements in accordance with section 521 of title 11 of the United States Code (the "Bankruptcy Code"), rule 1007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and rule 1007–1 of the Bankruptcy Local Rules for the Southern District of New York (the "Local Rules").

---

1   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Mr. Chris Ferraro, Acting Chief Executive Officer, Chief Restructuring Officer, and Chief Financial Officer of the Debtors, has signed each set of the Schedules and Statements. Mr. Ferraro is an authorized signatory for each of the Debtors. In reviewing and signing the Schedules and Statements, Mr. Ferraro has necessarily relied upon the efforts, statements, advice, and representations of personnel of the Debtors and the Debtors' legal and financial advisors. Mr. Ferraro has not (and could not have) personally verified the accuracy of each such statement and representation contained in the Schedules and Statements, including statements and representations concerning amounts owed to creditors, classification of such amounts, and respective creditor contact information.

In preparing the Schedules and Statements, the Debtors relied on financial data derived from their books and records that was available at the time of such preparation. Although the Debtors have made commercially reasonable efforts to ensure the accuracy and completeness of the Schedules and Statements, subsequent information or discovery may result in material changes to the Schedules and Statements. As a result, inadvertent errors or omissions may exist. For the avoidance of doubt, the Debtors hereby reserve all of their rights under the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules, including to amend and/or supplement the Schedules and Statements, as may be necessary or appropriate.

These *Global Notes and Statement of Limitations, Methodology, and Disclaimer Regarding the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs* (the "Global Notes") pertain to, are incorporated by reference in, and comprise an integral part of, each Debtor's respective Schedules and Statements. The Global Notes should be referred to and considered in connection with any review of the Schedules and Statements.[2]

## Global Notes and Overview of Methodology

1. **Description of Cases.** On July 13, 2022 (the "Petition Date"), eight of the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On December 7, 2022, Debtors GK8 Ltd., GK8 UK Limited, and GK8 USA LLC each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.[3] The Debtors' chapter 11 cases are being jointly administered for procedural purposes only under lead case *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y.). The Debtors are operating their business and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On July 27, 2022, the United States Trustee for the Southern District of New York (the "U.S. Trustee") appointed an official committee of unsecured creditors [Docket No. 241] (the "Committee"). Additional information regarding the Committee and its legal and financial advisors can be obtained at https://cases.ra.kroll.com/CelsiusCommittee/. The information provided herein, except

---

[2]    These Global Notes supplement and are in addition to any specific notes contained in each Debtor's Schedules or Statements. The fact that the Debtors have prepared a Global Note with respect to any of individual Debtor's Schedules and Statements and not to those of another should not be interpreted as a decision by the Debtors to exclude the applicability of such Global Note to any of the Debtors' other Schedules and Statements, as appropriate.

[3]    Copies of publicly filed documents in these chapter 11 cases are available at http://cases.stretto.com/Celsius (free of charge) or the Court's website at https://www.nysb.uscourts.gov/ecf-and-pacer-information (for a fee).

as otherwise noted, is reported as of the close of business on the Petition Date.  As detailed more fully in Schedule AB for Celsius Mining LLC, certain asset information is listed as of June 30, 2022.

2.      **Reporting of Cryptocurrencies.**  Cryptocurrency-related obligations associated with the Debtors' Earn, Custody, and Borrow programs are reported at Celsius Network LLC (and Celsius Lending LLC, as applicable).  Pursuant to the *Memorandum Opinion Regarding Which Debtor Entities Have Liability for Customer Claims Under the Terms of Use* [Docket No. 2205] (the "Account Holder Claim Opinion"), the general Terms of Use, dated April 14, 2022 [Docket No. 393, Ex. A-8] (the "April 14, 2022 General Terms of Use") provide that only Celsius Network LLC is liable to account holders on contract claims under the April 14, 2022 General Terms of Use, and such contract claims are now only scheduled as claims against Celsius Network LLC and, except as set forth below, not any other Debtor entity in light of the Account Holder Claim Opinion.  Any cross-reference to the Schedules of Celsius Network LLC in the previous Schedules filed by the Debtors[4] regarding the reporting of cryptocurrency-related obligations to account holders are of no force or effect as of the date of the *Order Regarding Which Debtor Entities Have Liability for Customer Contract Claims Under the Terms of Use* [Docket No. 2265] ("Account Holder Claim Order"), and account holders may not rely on such cross-references to assert cryptocurrency-related claims against any Debtor or non-Debtor affiliate.  The Account Holder Claim Order is not a final, non-appealable order as of the date hereof, and is subject to appeal.

The Account Holder Claim Opinion provides that "the terms of use do not limit Customers (or the Committee) from asserting non-contract claims against Celsius Network Ltd. ("CNL"), or against other Debtor or non-Debtor affiliates, such as claims for fraud, negligent misrepresentation, or other statutory or common law claims." Account Holder Claim Opinion at 4.  The Debtors have not scheduled any claims of account holders on account of fraud, negligent misrepresentation, or other statutory or common law claims, other than contract claims against Celsius Network LLC on account of the April 14, 2022 General Terms of Use.

Claims associated with the Debtors' Borrow program are also scheduled at Celsius Lending LLC by cross reference to the Schedules of Celsius Network LLC.

The Debtors reserve all rights to modify the Schedules and Statements including subject to a further order of the Court.

---

4    The Schedules were filed at the following docket entries:  Celsius Network LLC (Case No. 22-10964) [Docket No. 974]; Celsius Lending LLC (Case No. 22-10970) [Docket No. 5]; Celsius Mining LLC (Case No. 22-10968) [Docket No. 5]; Celsius Network Inc. (Case No. 22-10965) [Docket No. 6]; Celsius Network Limited (Case No. 22-10966) [Docket No. 7]; Celsius Networks Lending LLC (Case No. 22-10969) [Docket No. 5]; Celsius US Holding LLC (Case No. 22-10971) [Docket No. 5]; Celsius KeyFi LLC (Case No. 22-10967) [Docket No. 5]; GK8 Ltd. (Case No. 22-11643) [Docket No. 4]; GK8 UK Limited (Case No. 22-11645) [Docket No. 4]; and GK8 USA LLC (Case No. 22-11644) [Docket No. 4].

Pursuant to Bankruptcy Rule 3003(c)(2), if a claim is scheduled as contingent, unliquidated, or disputed, a creditor must file a proof of claim in order to preserve rights with respect to such claim. The Debtors have scheduled account holder contract claims related to the Debtors' Earn, Custody, and Borrow programs at Celsius Network LLC (and Celsius Lending LLC, as applicable) and have not scheduled any such claims as contingent, unliquidated, or disputed. For the avoidance of doubt, nothing contained in these Global Notes is intended as, or should be construed as, an admission or stipulation of the validity of any claim against any Debtor or a waiver of any Debtor's rights to dispute any claim or assert any cause of action or defense against any party.

3.    **Reservation of Rights**. Reasonable efforts have been made to prepare and file complete and accurate Schedules and Statements; however, inadvertent errors or omissions may exist. The Debtors reserve all rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York to: (i) amend and/or supplement the Schedules and Statements from time to time, in all respects, as may be necessary or appropriate, including the right to amend the Schedules and Statements with respect to the description, designation, or Debtor against which any claim ("Claim")[5] is asserted; (ii) dispute or otherwise assert offsets, setoffs, or other defenses to any Claim reflected in the Schedules and Statements as to amount, liability, priority, status, or classification; (iii) designate any Claim as "disputed," "contingent," or "unliquidated"; or (iv) object to the extent, validity, enforceability, priority, or avoidability of any Claim (regardless of whether of such Claim is designated in the Schedules and Statements as "disputed," "contingent," or "unliquidated"). Any failure to designate a Claim in the Schedules and Statements as "disputed," "contingent," or "unliquidated" does not constitute an admission by the Debtors that such Claim or amount is not "disputed," "contingent," or "unliquidated" or a waiver of any right to later object to any claim on any grounds. Listing a Claim does not constitute an admission of (a) liability or (b) amounts due or owed, if any, in each case, by the Debtor against which the Claim is listed or against any of the Debtors. Furthermore, nothing contained in the Schedules and Statements shall constitute a waiver of rights with respect to the Debtors' chapter 11 cases, including, without limitation, issues involving or defenses against Claims, substantive consolidation, defenses, statutory, or equitable subordination, and/or causes of action arising under the provisions of chapter 5 of the Bankruptcy Code and any other relevant non-bankruptcy laws to recover assets or avoid transfers. Any specific reservation or rights contained elsewhere in the Global Notes does not limit in any respect the general reservation of rights contained in this paragraph.

(a)    **No Admission.** Nothing contained in the Schedules and Statements is intended as, or should be construed as, an admission or stipulation of the validity of any Claim against any Debtor, any assertion made therein or herein, or a waiver of any Debtor's rights to dispute any Claim or assert any cause of action or defense against any party.

---

[5]    For the purposes of these Global Notes, "Claim" shall have the meaning as defined under section 101(5) of the Bankruptcy Code.

**(b)**    **Recharacterization.**    The Debtors have made reasonable efforts to correctly characterize, classify, categorize, and designate the claims, assets, executory contracts, unexpired leases, and other items reported in the Schedules and Statements.    Nevertheless, due to the complexity of the Debtors' business, the Debtors may not have accurately characterized, classified, categorized, or designated certain items and/or may have omitted certain items.    Accordingly, the Debtors reserve all of their rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York to recharacterize, reclassify, recategorize, or redesignate items reported in the Schedules and Statements at a later time as necessary or appropriate, including, without limitation, whether contracts or leases listed herein were deemed executory or unexpired as of the Petition Date and remain executory and unexpired postpetition.

**(c)**    **Classifications.**    Listing (i) a Claim on Schedule D as "secured," (ii) a Claim on Schedule E/F as "priority" or "unsecured," or (iii) a contract on Schedule G as "executory" or "unexpired" does not constitute an admission by the Debtors of the legal rights of the claimant or contract counterparty, or a waiver of the Debtors' rights to object to such claim, recharacterize or reclassify such Claim or contract or to setoff such Claims.

**(d)**    **Estimates and Assumptions.**    The preparation of the Schedules and Statements required the Debtors to make commercially reasonable estimates and assumptions with respect to the reported amounts of assets and liabilities on the date of the Schedules and Statements, and the reported amounts of revenues and expenses during the applicable reporting periods.    Actual results could differ from such estimates.

**(e)**    **Causes of Action.**    Despite reasonable efforts, the Debtors may not have identified and/or set forth all of their causes of action (filed or potential) against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets, which the Debtors have not scheduled.    The Debtors reserve all rights with respect to any causes of action (including avoidance actions), controversy, right of setoff, cross claim, counterclaim, or recoupment and any Claim on contracts or for breaches of duties imposed by law or in equity, demand, right, action, lien, indemnity, guaranty, suit, obligation, liability, damage, judgment, account, defense, power, privilege, license, and franchise of any kind or character whatsoever, known, unknown, fixed or contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, secured or unsecured, assertable directly or derivatively, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law they may have (collectively, "Causes of Action"), and neither the Global Notes nor the Schedules and Statements shall be deemed a waiver of any such Claims, Causes of Action, or avoidance actions or in any way prejudice or impair the assertion of such Claims or Causes of Action.

(f) **Intellectual Property Rights.** Exclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have been abandoned, have been terminated, or otherwise have expired by their terms, or have been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction. Conversely, inclusion of certain intellectual property shall not be construed to be an admission that such intellectual property rights have not been abandoned, have not been terminated, or otherwise have not expired by their terms, or have not been assigned or otherwise transferred pursuant to a sale, acquisition, or other transaction.

(g) **Cryptocurrency.** Certain of the Debtors' assets are cryptocurrencies, or digital tokens, based on a publicly accessible blockchain. Cryptocurrencies are unique assets. Certain laws and regulations that may be applicable to cryptocurrencies do not contemplate or address unique issues associated with the cryptocurrency economy, are subject to significant uncertainty, and vary widely across U.S. federal, state, and local and international jurisdictions. The Debtors make no representations or admissions concerning the status of cryptocurrency as a "security" under any state, federal, or local domestic or international statute, including United States federal securities laws, and reserve all rights to amend and/or supplement the Schedules and Statements as they deem appropriate in this regard. Furthermore, the Debtors have taken the position that, pursuant to the Court's ruling in the *Memorandum Opinion and Order Regarding Ownership of Earn Account Assets* [Docket No. 1822] and consistent with the applicable terms of use between the Debtors and their account holders, certain cryptocurrency held on the Debtors' platform, such as those coins held in "earn" accounts, is property of the Debtors' estates pursuant to section 541 of the Bankruptcy Code. The Court further ruled in the *Order (I) Authorizing the Debtors to Reopen Withdrawals for Certain Customers with Respect to Certain Assets Held in the Custody Program and Withhold Accounts and (II) Granting Related Relief* [Docket No. 1767] (the "Withdrawal Order") that cryptocurrency held in Custody Wallets and Ineligible Withhold Assets (both as defined in the Withdrawal Order) is not property of the estate pursuant to section 541 of the Bankruptcy Code. Pursuant to the Withdrawal Order and the *Order (I) Approving (A) the Settlement By and Among the Debtor, the Committee, and the Custody Ad Hoc Group and (B) the Election Form and (II) Granting Related Relief* [Docket No. 2291] (the "Settlement Order"), certain claims related to "custody" accounts and Ineligible Withhold Assets have been or will be satisfied by returning agreed-to cryptocurrency amounts to respective claimants. The Debtors have taken the position that it is unclear whether certain other cryptocurrency held on the Debtors' platform, such as claims associated with balances in "withhold" accounts, is property of the Debtors' estate pursuant to section 541 of the Bankruptcy Code.[6] The Debtors reserve all rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York with respect to these designations and to amend

---

[6]   There may be other legal theories as to whether such cryptocurrency assets may be property of the Debtors' estates. The Debtors reserve all such rights.

and/or supplement the Schedules and Statements as they deem appropriate in this regard.

**(h)**     **Insiders.**  The Debtors have attempted to include all payments made on or within 12 months before the Petition Date to any individual or entity deemed an "insider" (and their relatives). As to each Debtor, an individual or entity is designated as an insider for the purposes of the Schedules and Statements if such individual or entity, based on the totality of the circumstances, has at least a controlling interest in, or exercises sufficient authority over, the Debtor such that they dictate corporate policy and/or the disposition of corporate assets. Where an individual or entity was a "close call" with respect to being included in the Schedules and Statements as an insider, the Debtors have opted for increased disclosure and resolved such "close calls" in favor of treating such individuals or entities as insiders for purposes of the Schedules and Statements. Certain of the individuals or entities identified as insiders may not have been insiders for the entirety of the 12-month period before the Petition Date, but the Debtors have included them herein out of an abundance of caution.

The listing or omission of a party as an insider for purposes of the Schedules and Statements is for informational purposes and is not intended to be, nor should it be, construed as an admission that those parties are insiders for purpose of section 101(31) of the Bankruptcy Code. Information regarding the individuals or entities listed as insiders in the Schedules and Statements may not be used for: (a) the purposes of determining (i) control of the Debtors; (ii) the extent to which any individual or entity exercised management responsibilities or functions; (iii) corporate decision-making authority over the Debtors; or (iv) whether such individual or entity could successfully argue that it is not an insider under applicable law, including the Bankruptcy Code and federal securities laws, or with respect to any theories of liability or (b) any other purpose. Furthermore, the listing or omission of a party as an insider for purposes of the Schedules and Statements is not intended to be, nor should it be, construed an admission of any fact, right, claim, or defense, and all such rights, claims, and defenses available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York are hereby expressly reserved.

**4.**    **Methodology.**

**(a)**     **<u>Basis of Presentation</u>.**  Information contained in the Schedules and Statements has been derived from the Debtors' books and records and historical financial statements. The Schedules and Statements have not, however, been subject to procedures that would typically be applied to financial statements prepared in accordance with Generally Accepted Accounting Principles in the United States ("<u>GAAP</u>") or International Financial Reporting Standards ("<u>IFRS</u>") and are not intended to reconcile fully with any financial statements of each Debtor prepared under GAAP or IFRS. Therefore, combining the assets and liabilities set forth in the Schedules and Statements would result in amounts that are substantially different from financial information that would be prepared on a consolidated basis

under GAAP or IFRS.  For financial reporting purposes, prior to the Petition Date, the Debtors prepared financial statements on a consolidated basis.  Unlike the consolidated financial statements, the Schedules and Statements, except where otherwise indicated, reflect the assets and liabilities of each separate Debtor.  Moreover, given, among other things, the uncertainty surrounding the valuation, collection, and ownership of certain assets and the valuation and nature of certain liabilities, to the extent that a Debtor shows more assets than liabilities, it is not an admission that the Debtor was solvent as of the Petition Date or at any time before the Petition Date.  Likewise, to the extent a Debtor shows more liabilities than assets, it is not an admission that the Debtor was insolvent at the Petition Date or any time before the Petition Date.  For the avoidance of doubt, nothing contained in the Schedules and Statements is indicative of the Debtors' enterprise value.  The Schedules and Statements contain unaudited information that is subject to further review and potential adjustment.

(b)    **Confidential or Sensitive Information.**  There may be instances in which certain information in the Schedules and Statements intentionally has been redacted due to, among other things, the nature of an agreement between a Debtor and a third party, local restrictions on disclosure, concerns about the confidential nature of certain information, or concerns for the privacy of an individual (including minors).  The alterations will be limited to only what is necessary to protect the Debtor or applicable third party.  The Debtors may also be authorized or required to redact certain information from the public record pursuant to orders of the Court sealing or otherwise protecting such information from public disclosure, including the *Memorandum Opinion and Order on the Debtors' Sealing Motion* [Docket No. 910].  All such redacted information shall be made available as directed by orders of the Court or to the individual account holder or creditor scheduled, as applicable.

(c)    **Duplication.**  Certain of the Debtors' assets, liabilities, and prepetition payments may properly be disclosed in response to multiple parts of the Schedules and Statements.  Except as otherwise discussed below, to the extent these disclosures would be duplicative, the Debtors have determined to only list such assets, liabilities, and prepetition payments once.

(d)    **Net Book Value.**  In certain instances, current market valuations for certain assets are neither maintained by, nor readily available to, the Debtors.  Accordingly, unless otherwise indicated, the Debtors' Schedules and Statements reflect net book values.  Market values may vary, sometimes materially, from net book values.  The Debtors believe that it would be an inefficient use of estate assets for the Debtors to obtain the current market values of their property.  Accordingly, the Debtors have indicated in the Schedules and Statements that the values of certain assets and liabilities are undetermined or unknown.

Certain other assets, such as investments in subsidiaries and other intangible assets, are listed at undetermined amounts, as the net book values may differ materially from fair market values.  Amounts ultimately realized may vary from net book

value (or whatever value was ascribed) and such variance may be material. Accordingly, the Debtors reserve all of their rights to amend or adjust the value of each asset set forth herein. In addition, the amounts shown for total liabilities exclude items identified as "unknown" or "undetermined," and, thus, ultimate liabilities may differ materially from those stated in the Schedules and Statements.

In addition, assets that have been fully depreciated or that were expensed for accounting purposes either do not appear in these Schedules and Statements or are listed with a zero-dollar value, as such assets have no net book value. The omission of an asset from the Schedules and Statements does not constitute a representation regarding the ownership of such asset, and any such omission does not constitute a waiver of any rights of the Debtors with respect to such asset. Given, among other things, the current market valuation of certain assets and the valuation and nature of certain liabilities, nothing in the Schedules and Statements shall be, or shall be deemed to be, an admission that any Debtor was solvent or insolvent as of the Petition Date.

(e)     **Property.**  The Debtors' office property leases are set forth on Schedule G. Nothing in the Schedules and Statements is or shall be construed as an admission as to the determination as to the legal status of any lease (including whether any lease is a true lease or a financing arrangement), and the Debtors reserve all of their rights with respect to same.

(f)     **Allocation of Liabilities.**  The Debtors, in consultation with their advisors, have sought to allocate liabilities between the prepetition and postpetition periods based on the information and research that was conducted in connection with the preparation of the Schedules and Statements. As additional information becomes available and further research is conducted, the allocation of liabilities between prepetition and postpetition periods may change. The Debtors reserve the right to amend and/or supplement the Schedules and Statements pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules as they deem appropriate in this regard.

(g)     **Undetermined Amounts.**  The description of an amount as "unknown" or "undetermined" is not intended to reflect upon the materiality of such amount.

(h)     **Unliquidated Claim Amounts.**  Claim amounts that could not be readily quantified by the Debtors are scheduled as "unliquidated."

(i)     **Totals.**  All totals that are included in the Schedules and Statements represent totals of all the known amounts included in the Schedules and Statements. To the extent there are unknown or undetermined amounts, the actual total may be different than the listed total.

(j)     **Valuation of Cryptocurrency.**  Cryptocurrency amounts are generally listed by coin amount rather than a conversion to price in U.S. dollars. To the extent cryptocurrency values are presented in U.S. dollars, they reflect the valuation as set

forth in the Debtors' books and records as of the Petition Date or the time of the relevant transaction, as applicable. Actual net realizable value may vary significantly. The Debtors reserve all rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York in this respect with such values presented in the Schedules and Statements.

(k) **Paid Claims.** Pursuant to certain orders of the Court entered in the Debtors' chapter 11 cases entered shortly after the Petition Date (collectively, the "First Day Orders") as well as other orders of the Court, the Debtors have authority to pay certain outstanding prepetition payables pursuant to bankruptcy or other court order; as such, outstanding liabilities may have been reduced by any court-approved postpetition payments made on prepetition payables. Where and to the extent these liabilities have been satisfied, they are not listed in the Schedules and Statements, unless otherwise indicated. Regardless of whether such claims are listed in the Schedules and Statements, to the extent the Debtors have paid or later pay any amount of the claims listed in the Schedules and Statements pursuant to any orders entered by the Court, the Debtors reserve all rights to amend or supplement the Schedules and Statements or to take other action, such as filing claims objections, as is necessary and appropriate to avoid overpayment or duplicate payments for liabilities. Nothing contained herein should be deemed to alter the rights of any party in interest to contest a payment made pursuant to an order of the Court where such order preserves the right to contest such payment.

(l) **Intercompany Receivables and Payables.** Receivables and payables among the Debtors and among the Debtors and their non-Debtor affiliates are reported on Schedule A/B and Schedule E/F, respectively, per the Debtors' books and records. The Debtor's position with respect to certain intercompany claims is explained in the *Debtors' Statement with Respect to Intercompany Claims Held by Debtor Celsius Network LLC Against Its Debtor Affiliates* [Docket No. 2092]. Intercompany loan amounts scheduled may include accrued and unpaid interest. The listing of any amounts with respect to such receivables and payables is not, and should not be construed as, an admission or conclusion of the Debtors' regarding the allowance, classification, validity, or priority of such account or characterization of such balances as debt, equity, or otherwise. For the avoidance of doubt, the Debtors reserve all rights, claims, and defenses available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York in connection with any and all intercompany receivables and payables, including with respect to the characterization of intercompany claims, loans, and notes.

As described more fully in the Debtors' *Motion Seeking Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Maintain Existing Business Forms, and (D) Continue to Perform Intercompany Transactions, (II) Granting Superpriority Administrative Expense Status To Postpetition Intercompany Balances, And (III) Granting Related Relief* [Docket No. 21] (the "Cash Management Motion"), the Debtors engage in a range of

intercompany transactions in the ordinary course of business. Pursuant to the third interim order granting certain of the relief requested in the Cash Management Motion on an interim basis [Docket No. 699] (the "Cash Management Order"), the Bankruptcy Court has granted the Debtors authority to continue these intercompany transactions in the ordinary course of business on an interim basis. Thus, intercompany balances as of the Petition Date, as set forth in Schedule E/F or Schedule A/B 77, may not accurately reflect current positions.

(m)   **Guarantees and Other Secondary Liability Claims.** The Debtors have exercised reasonable efforts to locate and identify guarantees in their executory contracts, unexpired leases, and other such agreements. The Debtors may have inadvertently omitted guarantees embedded in their contractual agreements and may identify additional guarantees as they continue their review of their books and records and contractual agreements. The Debtors reserve their rights to amend the Schedules and Statements if additional guarantees are identified.

(n)   **Excluded Assets and Liabilities.** The Debtors have excluded certain categories of assets, tax accruals, and liabilities from the Schedules and Statements, including without limitation, accrued salaries and employee benefit accruals. In addition and as set forth above, the Debtors may have excluded amounts for which the Debtors have paid or have been granted authority to pay pursuant to the First Day Orders or other order that may be entered by the Court. Additionally, certain immaterial or *de minimis* assets and liabilities may have been excluded.

(o)   **Currency.** Unless otherwise indicated, all amounts are reflected in U.S. dollars or amount of cryptocurrency coins.

(p)   **Setoffs.** The Debtors may incur certain setoffs and other similar rights during the ordinary course of business. Offsets in the ordinary course can result from various items, including, without limitation, margin call or other lending-related transactions, intercompany transactions, pricing discrepancies, returns, and other disputes between the Debtors and their account holders and/or suppliers. These offsets and other similar rights are consistent with the ordinary course of business in the Debtors' industry and may not be tracked separately. Therefore, although such offsets and other similar rights may have been included in the Schedules, other offsets are not independently accounted for, and as such, may be excluded from the Schedules.

(q)   **Claims and Causes of Action.** The Debtors believe that they may possess certain Claims and Causes of Action against various parties. Additionally, the Debtors may possess contingent claims in the form of various avoidance actions they could commence under the provisions of chapter 5 of the Bankruptcy Code and other relevant non-bankruptcy laws. These Schedules and Statements reflect both transfers of cryptocurrency from earn accounts into custody accounts as well as withdrawals of cryptocurrency fully off of the Debtors' platform. As of the date hereof, the Debtors' advisors and the special committee of the board of directors of Celsius Network Limited are continuing to analyze whether such transfers and

11

withdrawals give rise to any claims or causes of action under chapter 5 of the Bankruptcy Code.

The Debtors, despite reasonable efforts, may not have identified and/or set forth all of their Causes of Action against third parties as assets in their Schedules and Statements, including, without limitation, avoidance actions arising under chapter 5 of the Bankruptcy Code and actions under other relevant bankruptcy and non-bankruptcy laws to recover assets. The Debtors reserve all of their rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York with respect to any Claims, Causes of Action, or avoidance actions they may have and nothing contained in these Global Notes or the Schedules and Statements shall be deemed a waiver of any such claims, avoidance actions, or Causes of Action or in any way prejudice or impair the assertion of such claims. Additionally, prior to the Petition Date, each Debtor, as plaintiff, may have commenced various lawsuits in the ordinary course of its business against third parties seeking monetary damages.

(r)     **Executory Contracts.** Although the Debtors made diligent efforts to attribute an executory contract to its rightful Debtor, in certain instances, the Debtors may have inadvertently failed to do so. Accordingly, the Debtors reserve all of their rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York with respect to the named parties of any and all executory contracts, including the right to amend Schedule G.

(s)     **Claims of Third-Party Related Entities.** While the Debtors have made every effort to properly classify each claim listed in the Schedules as being either disputed or undisputed, liquidated or unliquidated, and contingent or noncontingent, the Debtors have not been able to fully reconcile all payments made to certain third parties and their related entities on account of the Debtors' obligations to same. Therefore, to the extent that the Debtors have classified their estimate of claims of a creditor as disputed, all claims of such creditor's affiliates listed in the Schedules and Statements shall similarly be considered as disputed, whether or not they are designated as such.

(t)     **Umbrella or Master Agreements.** Contracts listed in the Schedules and Statements may be umbrella or master agreements that cover relationships with some or all of the Debtors. Where relevant, such agreements have been listed in the Schedules and Statements only of the Debtor that signed the original umbrella or master agreement. The master service agreements have been listed in Schedule G, but do not reflect any decision by the Debtor as to whether or not such agreements are executory in nature.

(u)     **Credits and Adjustments.** The Claims of individual creditors for, among other things, goods, products, services, or taxes are listed as the amounts entered on the Debtors' books and records and may either (i) not reflect credits, allowances, or other adjustments due from such creditors to the Debtors or (ii) be net of accrued credits, allowances, or other adjustments that are actually owed by a creditor to the

Debtors on a postpetition basis on account of such credits, allowances, or other adjustments earned from prepetition payments and vendor payments, if applicable. The Debtors reserve all of their rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York with regard to such credits, allowances, or other adjustments, including, but not limited to, the right to modify the Schedules, assert claims objections and/or setoffs with respect to the same, or apply such allowances in the ordinary course of business on a post-petition basis.

(v)    **Payments**.  The financial affairs and business of the Debtors are complex.  Prior to the Petition Date, the Debtors maintained a cash management and disbursement system in the ordinary course of their businesses, as described in the Cash Management Motion, as defined herein.  Although efforts have been made to attribute open payable amounts to the correct legal entity, the Debtors reserve all of their rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York to modify or amend their Schedules and Statements to attribute such payment to a different legal entity, if appropriate.

5.    **Specific Schedules Disclosures.**

(a)    **Schedule A/B, Question 3 – Checking, Savings, Money Market, or Financial Brokerage Accounts.**  Amounts listed are as of the Petition Date for the corresponding Debtor and reflect the actual bank balance, not the net book value.

(b)    **Schedule A/B, Questions 7 and 8 – Deposits and Prepayments.**  The Debtors are required to make deposits or prepayments from time to time with various vendors and other service providers in the ordinary course of business.  The Debtors have exercised reasonable efforts to report the current value of any deposits or prepayments.  The Debtors may have inadvertently omitted deposits or prepayments and conversely may have reported deposits or prepayments that are no longer outstanding.  The Debtors reserve their rights pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to amend the Schedules and Statements if deposits or prepayments are incorrectly identified.

(c)    **Schedule A/B, Question 15 – Non-Publicly Traded Stock.**  Equity interests in subsidiaries and affiliates primarily arise from common stock ownership or member or partnership interests.  For purposes of these Schedules, the Debtors have listed an undetermined value for the equity interests of all subsidiaries and affiliates. Nothing in these Schedules is an admission or conclusion of the Debtors regarding the value of such subsidiary and affiliate equity interests, which, under certain fair market or enterprise valuation analyses, may have value.

Book values of assets prepared in accordance with GAAP generally do not reflect the current performance of the assets or the impact of the industry environment and may differ materially from the actual value and/or performance of the underlying assets.  As such, the value listed in these Schedules and Statements cannot be, and was not, used to determine the Debtors' enterprise valuation.

13

(d)    **Schedule A/B, Question 55 – Real Property.**  The Debtors do not own any real property.  The Debtors' office and other property leases are set forth on Schedule G.

(e)    **Schedule A/B, Question 72 – Tax Refunds and Unused Net Operating Losses (NOLs).**  The Debtors' response to the schedule questionnaire is indicative of certain gross non-tax effected net operating loss ("NOL") values as compared to the GAAP net deferred tax assets associated with such NOLs. The actual tax savings from these NOLs is dependent upon, among other things, the timing, character, and amount of any future or previous years' (provided NOLs are allowed to be carried back) income to which they can be applied. Amounts also do not reflect the consideration of any valuation allowances recorded pursuant to GAAP, which have the effect of reducing associated deferred tax assets. Additionally, the NOLs listed in Schedule A/B, Question 72 reflect the amounts listed in the Debtors' books and records, may reflect NOLs accumulated for more than one tax year, and may be subject to expiration or limitations on usability now or in the future.  All figures set forth in Schedule A/B, Question 72 are preliminary, unreviewed, and unaudited and are subject to final adjustments.

(f)    **Schedule A/B, Question 73 – Interests in insurance policies or annuities.**  The Debtors have included a listing of their insurance policies in response to Question 73, however, a determination as to the surrender or refund value of each of the insurance policies has not been made and, therefore, the balance is listed as undetermined.

(g)    **Schedule A/B, Question 77 – Other property of any kind not already listed.**  Schedule A/B, Question 77 lists, among other things, the Debtors' cryptocurrency, or digital tokens, assets based on a publicly accessible blockchain.  The current value shown reflects the valuation as booked in the Debtors' books and records as of the Petition Date.  All figures set forth in Schedule A/B, Question 77 are preliminary, unreviewed, and unaudited and are subject to final adjustments following, *inter alia*, completion of quarterly and year-end close procedures.

(h)    **Schedule D – Creditors Who Have Claims Secured by Property.**  Except as otherwise agreed pursuant to a stipulation, or agreed order, or general order entered by the Court that is or becomes final, the Debtors and their estates reserve their rights to dispute or challenge the validity, perfection, or immunity from avoidance of any lien purported to be granted or perfected in any specific asset to any creditor of any Debtor.  The Debtors reserve all rights to dispute or challenge the secured nature of any such creditor's Claim or the characterization of the structure of any such transaction or any document or instrument related to such creditor's Claim.

The Debtors have not included on Schedule D parties that may believe their Claims are secured through setoff rights or inchoate statutory lien rights.

(i)    **Schedule E/F – Creditors Who Have Unsecured Claims.**  The listing of any Claim on Schedule E/F does not constitute an admission by the Debtors that such

Claim or any portion thereof is entitled to priority treatment under section 507 of the Bankruptcy Code. The Debtors reserve all of their rights available pursuant to the Bankruptcy Code, Bankruptcy Rules, or Local Rules for the Southern District of New York to dispute the amount and/or the priority status of any Claim on any basis at any time.

***Part 1 - Creditors with Priority Unsecured Claims.*** Pursuant to the *Final Order (I) Authorizing the Payment of Certain Taxes and Fees and (II) Granting Related Relief* [Docket No. 526] (the "Taxes Order"), the Court granted the Debtors authority to pay, in their sole discretion, certain tax liabilities and regulatory fees, including certain business licensing fees, that accrued prepetition. Accordingly, any unsecured priority claims based upon prepetition tax accruals that have been or will be paid pursuant to the Taxes Order are not listed in Schedule E.

Furthermore, pursuant to the *Final Order Authorizing the Debtors to (I) Authorizing the Debtors to (A) Pay Prepetition Wages, Salaries, Other Compensation, and Reimbursable Expenses and (B) Continue Employee Benefits Programs and (II) Granting Related Relief* [Docket No. 518] (the "Wages Order"), the Court granted the Debtors authority to pay or honor certain prepetition obligations for employee wages, salaries, and other compensation, reimbursable employee expenses, and employee medical and similar benefits, in the ordinary course of business. The Debtors believe that all such Claims have been, or will be, satisfied in the ordinary course during their chapter 11 cases pursuant to the authority granted in the Wages Order, and such satisfied amounts are not set forth on Schedule E.

The listing of a claim on Schedule E/F, Part 1 does not constitute an admission by the Debtors that such claim or any portion thereof is entitled to priority status.

***Part 2 - Creditors with Nonpriority Unsecured Claims.*** The liabilities identified in Schedule E/F, Part 2 are derived from the Debtors' books and records. The Debtors made a reasonable attempt to set forth their unsecured obligations, although the actual amount of Claims against the Debtors may vary from those liabilities represented on Schedule E/F, Part 2. The listed liabilities may not reflect the correct amount of any unsecured creditor's allowed Claims or the correct amount of all unsecured Claims. Certain creditors listed on Schedule E/F may owe amounts to the Debtors and, as such, the Debtors may have valid setoff or recoupment rights with respect to such amounts, including on account of outstanding cryptocurrency or other loans. The amounts listed on Schedule E/F do not reflect any such right of setoff or recoupment and the Debtors reserve all rights to assert any such setoff or recoupment rights.

Schedule E/F, Part 2 contains information regarding threatened or pending litigation involving the Debtors. The amounts for these potential claims are listed as "undetermined" and are marked as contingent, unliquidated, and disputed in the Schedules and Statements. In certain instances, the date on which a litigation claim arose is an open issue of fact. Determining the date upon which each claim in

Schedule E/F, Part 2 was incurred or arose would be unduly burdensome and prohibitively costly and, therefore, the Debtors do not list a date for each claim listed on Schedule E/F, Part 2.

Schedule E/F, Part 2 reflects the prepetition amounts owing to counterparties to executory contracts and unexpired leases. Such prepetition amounts, however, may be paid in connection with the assumption, or assumption and assignment, of an executory contract or unexpired lease. In addition, Schedule E/F, Part 2 does not include rejection damage claims, to the extent such damage claims exist, of the counterparties to the executory contracts and unexpired leases that have been or may be rejected.

Schedule E/F, Part 2 does not include certain deferred credits, deferred charges, deferred liabilities, accruals, or general reserves. Such amounts are general estimates of liabilities and do not represent specific claims as of the Petition Date; however, such amounts are reflected on the Debtors' books and records as required in accordance with GAAP.

The claims of individual creditors for, among other things, goods, services, or taxes listed on the Debtors' books and records may not reflect credits or allowances due from such creditors. The Debtors reserve all of their rights in respect of such credits or allowances. The dollar amounts listed may be exclusive of contingent or unliquidated amounts.

**(j)**   **Schedule G – Executory Contracts and Unexpired Leases.** While reasonable efforts have been made to ensure the accuracy of Schedule G, inadvertent errors or omissions may have occurred. The Debtors reserve all rights pursuant to the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules to supplement or amend Schedule G as necessary.

Certain relationships between the Debtors and their vendors and account holders may be governed by a master services agreement, under which counterparties may place purchase orders or other ancillary agreements which may be considered executory contracts.

Listing a contract or agreement on Schedule G does not constitute an admission that such contract or agreement is an executory contract or unexpired lease or that such contract or agreement was in effect on the Petition Date or is valid or enforceable. The Debtors hereby reserve all of their rights to dispute the validity, status, or enforceability of any contracts, agreements, or leases set forth in Schedule G and to amend or supplement such Schedule as necessary. Certain of the leases and contracts listed on Schedule G may contain renewal options, guarantees of payment, indemnifications, options to purchase, rights of first refusal and other miscellaneous rights. Such rights, powers, duties, and obligations are not set forth separately on Schedule G. In addition, the Debtors may have entered into various other types of agreements in the ordinary course of their business, such as

supplemental agreements and letter agreement, which documents may not be set forth in Schedule G.

The Debtors reserve all rights to dispute or challenge the characterization of any transaction or any document or instrument related to a creditor's claim.

In some cases, the same counterparty may appear multiple times in Schedule G. Multiple listings, if any, reflect distinct agreements between the applicable Debtor and such supplier or provider.

The listing of any contract on Schedule G does not constitute an admission by the Debtors as to the validity of any such contract. The Debtors reserve the right to dispute the effectiveness of any such contract listed on Schedule G or to amend Schedule G at any time to remove any contract.

Omission of a contract or agreement from Schedule G does not constitute an admission that such omitted contract or agreement is not an executory contract or unexpired lease. The Debtors' rights under the Bankruptcy Code, the Bankruptcy Rules, or the Local Rules with respect to any such omitted contracts or agreements are not impaired by the omission.

6.    **Specific Statements Disclosures.**

    (a)    **Statement Question 3 – Payments to Creditors.**   All accounts payable disbursements listed in Statement Question 3 are made through the Debtors' cash management system, more fully described in the Cash Management Motion. Dates listed in Statement Questions 3 reflect the dates upon which the Debtor transferred funds to the relevant payee or disbursing agent. Certain disbursements may be excluded from Statement 3, such as disbursements to retained professionals (reported elsewhere). Certain payroll-related pass-through payments have been excluded from Statement 3.

    Statement Question 3 also includes details regarding certain cryptocurrency transactions, including earned interest or rewards, coin withdrawals and deposits, coin transfers, and other transactions, in order to provide a transparent transaction history. The Debtors recognize that not all listed transactions are directly responsive to Statement Question 3, however they believe that presenting the transaction history provides the most accurate view. Due to their voluminous nature, earned rewards are presented on an aggregated basis by transferee and by coin type. A table describing the transaction codes and their meanings is included following section (b) below.

    After the Debtors established custody accounts on April 15, 2022, certain withdrawals off of the Debtors' platform may have moved through a custody account. As a result, coin transfers from a non-custody to a custody account listed in Statement Question 3 may also be reflected in coin withdrawals on Statement Question 3.

For the avoidance of doubt, any payments made in connection with the Debtors' bankruptcy within the 12-month period prior to the Petition Date are disclosed in response to Statement Question 11 and therefore are not listed in response to Statement Question 3.  Further, any payments made to an insider within the 12-month period prior to the Petition Date are disclosed in response to Statement Question 4 and therefore are not listed in response to Statement Question 3.

**(b)**    **Statement Question 4 – Payments to Insiders.**  The Debtors have responded to Statement Questions 4 and 30 in detailed format by insider in the attachment for Statement Question 4.

Included in Statement Question 4 are expense reimbursements paid to insiders on account of charges to their corporate credit card.  In addition to reimbursements for personal business expenses, responses to Statement Question 4 may also include payments for Debtor business expenses, such as vendor invoices, also charged to the insider's corporate credit card.  Such vendor payments are included to ensure completeness but do not represent transfers for the personal benefit of the insider.  The response to Statement Question 4 excludes any charges related to certain employee training programs.  Due to reporting constraints, certain expense line items may be duplicated.  Additional detail is available upon request.

Statement Question 4 also includes details regarding certain cryptocurrency transactions, including earned interest or rewards, coin withdrawals and deposits, coin transfers, and other transactions, in order to provide a transparent transaction history.  The Debtors recognize that not all listed transactions are directly responsive to Statement Question 4, however they believe that presenting the transaction history provides the most accurate view.  Due to their voluminous nature, earned rewards are presented on an aggregated basis by transferee and by coin type.  A table describing the transaction codes and their meanings is included below.  For the avoidance of doubt, insiders earned rewards on their cryptocurrency at the same rate as every other account holder in the earn program.

After the Debtors established custody accounts on April 15, 2022, certain withdrawals off the Debtors' platform may have moved through a custody account.  As a result, coin transfers from a non-custody to a custody account listed in Statement Question 4 may also be reflected as coin withdrawals listed in Statement Question 4.

The Debtors have also reported monthly intercompany positions in Statement Question 4.  In addition, intercompany payables and receivables as of the Petition Date can be found on Schedule E/F and Schedule AB.

To the extent: (i) a person qualified as an insider in the year prior to the Petition Date but later resigned their insider status or (ii) did not begin the year as an insider but later became an insider, the Debtors have listed in response to Statement Question 4 all payments or transfers made during the applicable 12-month period, irrespective of when such person was defined as an "insider."

As discussed above, the inclusion of a party as an insider is not intended to be, nor should be, construed as a legal characterization of such party as an insider and does not act as an admission of any fact, Claim, right, or defense, and any such rights, Claims, and defenses are hereby expressly reserved.

| Descriptive Purpose | Definition |
| --- | --- |
| Deposit | Incoming transfer of funds into a user's account that results in an increase in the user account balance of coin that was deposited. |
| Withdrawal | Coin withdrawals are reductions to a Celsius users balance and may include withdrawals for the purpose of moving coin between a single users accounts. |
| Inbound Transfer | CelPay is a crypto-remittance product where customers can initiate a crypto-asset transfers to other Celsius customers. Instead of initiating a transfer to a crypto wallet address, a link is generated and can be shared with the proposed receiver. The receiver needs to be registered with Celsius for the transfer to complete. This represents the inbound side of the transaction. |
| Outbound Transfer | See above. This represents the outbound side of the transaction. |
| Interest | Rewards paid at a fixed rate, reset weekly, for holding coin in an "Earn" account. |
| Internal Account Transfer | Movement of funds between Celsius Earn, Custody or Withheld account types. |
| Swap In | Represents the <u>funds received</u> in a swap transaction (e.g. if you buy 1 BTC with 30,000 USDC, you will see a <u>swap in</u> transaction for + 1 BTC). |
| Swap Out | Represents the <u>funds paid</u> in a swap transaction (e.g. if you buy 1 BTC with 30,000 USDC, you will see a <u>swap out</u> transaction for -30,000 USDC). |
| Loan Principal Payment | Represents the amounts funded for the loan and the amounts paid by the user to repay loan principal. |
| Loan Interest Payment | Represents payments made to satisfy loan interest. |
| Loan Principal Liquidation | Represents the amount of collateral sold to pay off the borrowed principal (e.g. if a loan for $20K USD is liquidated, and the price of BTC is $16K then this field will equal -1.25 (BTC); number should be a negative)). This transaction reduces the overall user account balance (of the token held in collateral) by the amount of the token that was liquidated. |
| Loan Interest Liquidation | The final interest charged on the liquidation of a loan. |
| Collateral | Coin pledged as security for repayment of a loan in the event of a borrowers default. Will include any initial collateral posted as security, as well as any additional collateral provided in response to margin calls. Collateral transaction line items do not represent actual coin movement. These line items reflect system designations that separately identify pledged coin from non-pledged coin in a given account. |
| Operation Cost | Represents the liquidation fee charged on the closing of a loan. |
| Referred Award | Represents an award of coin to new users who are referred by an existing customer. |
| Referrer Award | Represents an award of coin to a user for referring a new customer to Celsius. |
| Bonus Token | Represents coins rewarded as a bonus for achieving certain milestones. |
| Promo Code Reward | Reward for entering a unique code on a users account and depositing a certain amount of coin on to the platform to qualify for the promotion. |

(c)    **Statement Question 11 – Payments Made Related to Bankruptcy.** Although the Debtors have made reasonable efforts to distinguish between payments made for professional services related and unrelated to their restructuring efforts, some amounts listed in response to Statement Question 11 may include payments for professional services unrelated to bankruptcy.

(d)    **Statement Question 21 – Property Held for Another.** Statement Question 21 details certain cryptocurrency held in custody and/or withhold accounts. Due to the voluminous nature of this data, amounts held in custody and/or withhold accounts are listed alongside amounts held in earn accounts on Schedule F. For the avoidance of doubt, the listing of such amounts on Schedule F is purely for clerical simplicity and efficiency, and does not amount to an assertion that such amounts are general unsecured claims or property of the estate pursuant to section 541 of the Bankruptcy Code.

(e)    **Statement Question 25 – Other Businesses.** In addition to business interests listed in Statement Question 25, the Debtors also have or had interests in various decentralized autonomous organizations (DAOs). Due to the non-traditional structure of DAOs, they have been excluded from Statement Question 25.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) ) | Chapter 11 |
| CELSIUS NETWORKS LENDING LLC, *et al.*,[1] | ) ) ) ) | Case No. 22-10969 (MG) |
| Debtors. | ) ) ) | (Jointly Administered) |

## AMENDED SCHEDULES OF ASSETS AND LIABILITIES
## OF CELSIUS NETWORKS LENDING LLC (CASE NO. 22-10969)

---

[1]   The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are:  Celsius Network LLC (2148); Celsius KeyFi LLC (4414); Celsius Lending LLC (8417); Celsius Mining LLC (1387); Celsius Network Inc. (1219); Celsius Network Limited (8554); Celsius Networks Lending LLC (3390); Celsius US Holding LLC (7956); GK8 Ltd. (1209); GK8 UK Limited (0893); and GK8 USA LLC (9450).  The location of Debtor Celsius Network LLC's principal place of business and the Debtors' service address in these chapter 11 cases is 50 Harrison Street, Suite 209F, Hoboken, New Jersey 07030.

Debtor _____Cerise Networks Lending LLC_____    Case number (if known) _____22-10969 (MG)_____
        Name

| **Part 2:** | **List All Creditors with NONPRIORITY Unsecured Claims** |

**3.** **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If the debtor has more than 6 creditors with nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

|  |  | Amount of claim |
|---|---|---|

**3.1** **Nonpriority creditor's name and mailing address**
RETAIL CUSTOMER LIABILITIES – NONE.  PLEASE REFER TO THE AMENDED GLOBAL NOTES.

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☒ No
☐ Yes

$ _____

---

**3.2** **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

$ _____

---

**3.3** **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

$ _____

---

**3.4** **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

$ _____

---

**3.5** **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

$ _____

---

**3.6** **Nonpriority creditor's name and mailing address**

**As of the petition filing date, the claim is:**
*Check all that apply.*
☐ Contingent
☐ Unliquidated
☐ Disputed

**Basis for the claim:**

**Date or dates debt was incurred**

**Last 4 digits of account number**

**Is the claim subject to offset?**
☐ No
☐ Yes

$ _____